[Cite as *State v. Ibrahim*, 2014-Ohio-666.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-167 |
| v. | : | (C.P.C. No. 12CR-509) |
| Mohamed Ibrahim, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 25, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*The Law Office of Eric J. Allen, LTD*, and *Eric J. Allen*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant, Mohamed Ibrahim, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On January 21, 2012, a number of Somali friends and acquaintances were gathered at an apartment located at 3740 Eakin Road in Franklin County, Ohio. Shortly after midnight, appellant and the co-defendant[1] forcefully entered the apartment wearing masks. Appellant was armed with a handgun. The intruders ordered the occupants of the apartment to the floor and began to rob them of their wallets, cell phones, and other

---

[1] See the companion case for co-defendant Mohamed Noor, Franklin C.P. No. 12CR-510.

belongings.  They trashed the apartment and terrorized the occupants by kicking them, putting the gun against their heads, and threatening their lives for approximately 30 minutes.

{¶ 3}  During the ordeal, appellant pistol-whipped one victim in the head, which not only injured that person, it caused the gun to discharge.  The bullet struck another victim in the stomach.  Once the gun discharged, the situation changed and the occupants of the apartment rose up against the intruders, disarmed appellant, and beat appellant and the co-defendant with punches, kicks, and blows from a baseball bat.  Meanwhile, the shooting victim escaped the apartment through a small window in the bathroom.  The shooting victim placed one of the 911 calls that brought police and medics to the scene to neutralize the situation and tend to the injured.

{¶ 4}  As a result of this incident, appellant was indicted on 47 separate counts. After a jury trial, appellant was convicted of 1 count of aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree; 2 counts of felonious assault, in violation of R.C. 2903.11, felonies of the second degree; 11 counts of kidnapping, in violation of R.C. 2905.01, felonies of the first degree; and 11 counts of aggravated robbery, in violation of R.C. 2911.01, felonies of the first degree, all with accompanying firearm specifications. Appellant was sentenced to a total of 57 years imprisonment.

## II. ASSIGNMENTS OF ERROR

{¶ 5}  Appellant timely appealed from his sentencing entry and now presents the following two assignments of error for our review:

> Assignment of Error Number One
>
> The interpreter used by the prosecution was not qualified pursuant to R.C 2911.14 [sic].[2]
>
> Assignment of Error Number Two
>
> The trial court abused its discretion when it sentenced Appellant to a fifty seven year term of incarceration.

---

[2] Appellant cited an incorrect code section in his assignment of error.  The context of these proceedings support appellant intended to cite R.C. 2311.14, which deals with the appointment of an interpreter.  *See* R.C. 2311.14.

## III. DISCUSSION

{¶ 6}   In his first assignment of error, appellant argues that the trial court did not comply with the statutory requirements to examine the interpreter regarding his credentials and determine if he was qualified before he began interpreting.

{¶ 7}   After the first witness that testified through the interpreter concluded his testimony, the co-defendant's counsel raised a concern about the interpretation:

> [TRIAL COUNSEL FOR CO-DEFENDANT]: I don't speak Somali, so I have no idea, but my client informs me that he believes some of the translation was off. I spoke with [appellant's trial counsel]. I spoke with [appellant] who believes the same. I had spoken with the interpreter beforehand, asked him if he was certified by the Ohio Supreme Court. And I know they have some certifications. I do not know if they have certifications in Somali. I know we've had that issue over in Municipal Court.
>
> He indicated to me that he was beforehand, so I was comfortable going ahead. But I don't think he was being deceptive or anything at all. But he came up to me afterwards and said he was not, in fact, certified by the Supreme Court and does have some sort of papers that he's been in this court before. What that means I don't know, but I thought I would just bring it to the Court's attention just to ensure that we're on all fours here.
>
> THE COURT: Well, I'll just ask the interpreter, what is your situation with regard to --
>
> THE INTERPRETER: Exactly the way he put it is not correct. He said are you certified to the court. I did not really hear the Supreme Court. I was contemplating. I said, yes, I'm certified. And they gave us letters that have been in a lot of cases in this court, federal court and municipal and general, all of them.
>
> And actually this year what we've done as interpreter company, they gave us letters and make sure everybody went through all the training and everything. And they gave us letters to show every judge that certifies, says that I am certified, and that's what we go by.
>
> If it's a specific Ohio State Supreme Court certification, and then, no, I do not have that one, and that can be arranged by the interpreter services.  But I interpret all the cases, and I've

been there. And I haven't had a problem before. That's where I'm at now, and I have my letter to show you.

THE COURT: Okay. Do we have your name on the record?

THE INTERPRETER: You should mention it, but let me get you my name, my badge, and the letter that I got.

THE COURT: Okay. Fine.

[TRIAL COUNSEL FOR APPELLANT]: Your Honor, just for the record, my client, after I was questioning the last witness, when I sat down, he bent over and just said that he was concerned because he didn't believe that every -- that the interpretation was going word for word. He thought that some of the things were being left out. We just ask for the interpretation to go word for word. I don't have any problems with the interpreter. I've worked with him before, but my client's concern is everything being interpreted.

THE COURT: Yes, I would only state that the interpretation should be word by word if possible. Probably not always possible. If your client knows that something is being misleading, then if he could point that out, we'll deal with it.

* * *

THE INTERPRETER: This is the letter.

* * *

THE COURT: We'll make a copy of his credentials and make it a part of the record.

(Tr. Vol. II, 302-04.)

{¶ 8} A copy of the letter regarding the interpreter's credentials states:

Abdulkadir Hagi is a language-skilled interpreter and has worked with ASIST Translation Services since 2006. Abdulkadir has passed the third party proficiency exam and has had medical, legal and social service trainings throughout the course of his career. Abdulkadir continues to further his knowledge through offered trainings in the community.

(Tr. Vol. IV, attachment.)

{¶ 9} Appellant did not object to the trial court's appointment of the interpreter, the interpreter's qualifications, or the trial court's alleged failure to examine the interpreter regarding his qualifications. Furthermore, although the trial court encouraged appellant to bring concerns to the court's attention, four additional witnesses testified through the interpreter after this discussion, and no objection was ever raised. Therefore, appellant waived all but plain error. *See State v. Newcomb*, 10th Dist. No. 03AP-404, 2004-Ohio-4099, ¶ 22.

{¶ 10} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is not present unless, but for the error complained of, the outcome of the trial would have been different. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 78, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. We notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *Long* at paragraph three of the syllabus.

{¶ 11} A court must "appoint a qualified interpreter" for a party needing that assistance during a legal proceeding, and "[a]n interpreter is subject to * * * qualification as an expert."[3] *State v. Jama*, 189 Ohio App.3d 687, 2010-Ohio-4739, ¶ 20 (10th Dist.), quoting R.C. 2311.14(A)(1) and Evid.R. 604, citing *Newcomb* at ¶ 22, 26.

{¶ 12} There is no allegation in this case that the interpreter did not take an oath before being utilized, and the record indicates "the interpreter was duly sworn" before he began to interpret. (Tr. Vol. II, 271.) Furthermore, although appellant now alleges the interpreter was not qualified, the transcript reveals the court engaged in a qualification process. The transcript also reveals that counsel for the co-defendant participated in the

---

[3] Rule 88(D) of the Ohio Rules of Superintendence require trial courts to appoint "a Supreme Court certified foreign language interpreter." (88(D)(1).) If a certified interpreter "does not exist or is not reasonably available and after considering the gravity of the proceedings and whether the matter could be rescheduled to obtain a * * * certified * * * interpreter, a court may appoint a provisionally qualified foreign language interpreter." (88(D)(2).) Finally, if a professionally qualified foreign language interpreter "does not exist or is not reasonably available and after considering the gravity of the proceedings and whether the matter could be rescheduled to obtain a * * * provisionally qualified * * * interpreter, a court may appoint a foreign language interpreter who demonstrates to the court proficiency in the target language and sufficient preparation to properly interpret the case proceedings. Such interpreter shall be styled a 'language-skilled foreign language interpreter.' " (88(D)(3).) Appellant has not alleged as error any noncompliance with Rule 88. Therefore, we need not address the same.

same. Nine witnesses who were present in the apartment during the robbery testified for the state. Four of those individuals testified without the assistance of the interpreter, and five testified through the interpreter. The testimony of all nine witnesses was consistent regarding what transpired on the night in question. Appellant did not express further concern once the court clarified the interpreter's qualifications and directed him to interpret word for word. Accordingly, we do not find plain error.

{¶ 13} Finally, appellant relies on *Columbus v. Lopez-Antonio*, 153 Ohio Misc.2d 4, 2009-Ohio-4892, in support of his position. However, unlike this case, the defendant in *Lopez-Antonio* timely objected to the court interpreter's qualifications. Further, at no point did the objecting party in this case indicate that he did not have any problems with the interpreter. In fact, appellant's counsel stated "I don't have any problems with the interpreter." (Tr. Vol. II, 304.)

{¶ 14} Appellant has not demonstrated the trial court's actions regarding the interpreter affected the outcome of trial. Because appellant has not established plain error, his first assignment of error is overruled.

{¶ 15} In his second assignment of error, appellant argues the trial court abused its discretion when it sentenced him to 57 years of incarceration. Appellant concedes that "[a]ll of the individual sentences are within the allowable range under the Ohio Revised Code." (Appellant's brief, 9.) He simply argues, given the facts of this case, it was an abuse of discretion to sentence him to such a long prison term. We disagree.

{¶ 16} This court reviews a trial court's sentence to determine if it is clearly and convincingly contrary to law. *State v. Green*, 10th Dist. No. 10AP-934, 2011-Ohio-6451, ¶ 7, citing *State v. Burton*, 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶ 19; R.C. 2953.08(G). "In applying this standard, we look to the record to determine whether the sentencing court considered and properly applied the [non-excised] statutory guidelines and whether the sentence is otherwise contrary to law." *Green* at ¶ 7, citing *State v. Carse*, 10th Dist. No. 09AP-932, 2010-Ohio-4513, ¶ 60; *Burton*.

{¶ 17} After *Burton*, the Supreme Court of Ohio issued a plurality decision in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, finding appellate courts must apply a two-step approach when reviewing felony sentences. First, appellate courts must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If

this factor is satisfied, then the appellate court reviews the trial court's decision to impose a term of imprisonment under the abuse of discretion standard. *Id.* at ¶ 26; *State v. Vaughn*, 10th Dist. No. 09AP-73, 2009-Ohio-4970, ¶ 13.

{¶ 18} Whether we apply the two-step analysis set forth in *Kalish* or simply the contrary to law standard used in *Burton*, we find the trial court did not err in sentencing appellant to a maximum period of incarceration.

{¶ 19} Additionally, appellant did not object to the length of his sentence at the sentencing hearing in the trial court. Therefore, we may only reverse his sentence if it rises to the level of plain error. *See* Crim.R. 52(B); *State v. Worth*, 10th Dist. No. 10AP-1125, 2012-Ohio-666, ¶ 84.

{¶ 20} Here, the record reflects, and appellant concedes, the trial court considered and applied the appropriate statutory sentencing criteria and imposed a sentence authorized by applicable law. In particular, the trial court made the required findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences. The sentencing entry states the court "considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the facts set forth in R.C. 2929.12." (Judgment entry, 2.) This language in the sentencing entry defeats a claim that the trial court failed to consider statutory guidelines. *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807, ¶ 31. Furthermore, based on the circumstances, the length of the sentence imposed was not an abuse of discretion. The trial court noted the danger imposed when the intruders broke into the home, pointed a firearm at everyone's head, and "knocked [them] around" for up to 40 minutes. (Tr. Vol. IV, 894.) For these reasons, we find the trial court did not abuse its discretion when imposing appellant's sentence or commit error, plain or otherwise. Therefore, appellant's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 21} For the foregoing reasons, having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____