[Cite as *State v. Ibrahim*, 2014-Ohio-5307.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-355 |
| v. | : | (C.P.C. No. 12CR-01-509) |
| Mohamed A. Ibrahim, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 28, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Alan D. Gabel*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Mohamed A. Ibrahim ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying a hearing on his petition for postconviction relief and ultimately denying the same. For the following reasons, we affirm in part and reverse in part.

{¶ 2} In February 2013, appellant was convicted of one count of aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree; two counts of felonious assault, in violation of R.C. 2903.11, felonies of the second degree; eleven counts of kidnapping, in violation of R.C. 2905.01, felonies of the first degree; and eleven counts of aggravated robbery, in violation of R.C. 2911.01, felonies of the first degree, all with accompanying firearm specifications. The charges arose from a home invasion in which appellant, and his co-defendant, Mohamed M. Noor ("Noor"), entered the home of Farheyo Abdulkar ("Farheyo"), and robbed her and 10 of her guests at gunpoint.

Appellant was sentenced to a total of 57 years' imprisonment.  Noor was convicted of the same, as well as having a weapon under disability.  He was sentenced to a total of 65 years in prison.[1]

{¶ 3}  Ibrahim and Noor were tried together before a jury.   Both appealed their convictions. In his appeal, Ibrahim set forth two assignments of error alleging that the trial court erred because:  (1) the court used an interpreter who was not qualified pursuant to R.C. 2911.14; and (2) the court abused its discretion when it imposed a 57-year prison sentence.  Noor set forth five assignments of error alleging the trial court erred because: (1) the court failed to instruct the jury on the mental state required to convict as an aider or abettor; (2) the court permitted certain testimony of police officer witnesses; (3) the court failed to appoint an interpreter qualified by the Supreme Court of Ohio and failed to record the foreign language testimony; (4) the court refused to instruct on trespass as a lesser-included offense of aggravated burglary; and (5) the court erred by not merging the kidnapping and aggravated robbery charges.

{¶ 4}  On February 25, 2014, we affirmed appellant's convictions in *State v. Ibrahim*, 10th Dist. No. 13AP-167, 2014-Ohio-666; on August 5, 2014, we affirmed in part and reversed in part Noor's convictions in *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, and remanded the case to the trial court for further proceedings consistent with our finding that the trial court erred in not merging the aggravated robbery and kidnapping offenses. The facts regarding the home invasion are extensively summarized in the aforementioned cases and will not be summarized here.

{¶ 5}  On November 12, 2013, Ibrahim filed a petition for postconviction relief, pursuant to R.C. 2953.21(C).  He asserted the following grounds for relief:

- Ineffective assistance of trial counsel:

  o   For failure to investigate and adequately prepare for trial;

  o   For failure to subpoena key witnesses to testify on appellant's behalf;

---

[1] Noor appealed his sentence, and this court found that the trial court erred in not merging his convictions for aggravated robbery and kidnapping.  We therefore reversed and remanded the case for the trial court to conduct further proceedings, consistent with our decision.  *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397. On August 13, 2014, the state moved that we reconsider our decision, which we denied. *State v. Noor*, 10th Dist. No. 13AP-165 (Nov. 25, 2014) (memorandum decision).

- o For failure to inform appellant sufficiently to enable him to assist in his own defense;

- o For failures relating to the use of an interpreter at trial:

    - Failure to preserve the record of translation;

    - Failure to request interpreter's qualifications be established on the record;

    - Failure to question the availability of a certified interpreter;

    - Failure to object to less than a word-for-word translation;

    - Failure to request that the interpreter be sworn in on the record.

- o Failure to argue self-defense or to request a self-defense instruction;

- o Failure to adequately present or develop significant evidence at trial;

- o Failure to investigate, evaluate and present evidence of mitigating circumstances with respect to appellant's sentencing;

- o Failure to object to appellant's conviction of both aggravated robbery and kidnapping and failure to object to non-merger of the same.[2]

- Cumulative error and effect.

- Ineffective assistance of appellate counsel:

    - o For failure to raise on appeal ineffective assistance of trial counsel for failures relating to the use of an interpreter at trial;

    - o For failure to raise on appeal ineffective assistance of trial counsel for failure to request severance of trial for Ibrahim from Noor or to ask for a mistrial when Noor's counsel shifted the blame for the criminal activity to appellant;

---

[2] Appellant does not address this issue on appeal and, therefore, we will not address it. Furthermore, such a claim was apparent from the transcript of the trial, was raised by co-defendant Noor on appeal, and could have been raised by appellant's counsel on appeal. Therefore, it is barred by res judicata.

     o   For failure to raise on appeal ineffective assistance of trial counsel for failure to object to appellant's conviction of both aggravated robbery and kidnapping and failure to object to non-merger of the same.

The state moved to dismiss for being untimely[3] and filed an answer to the same. On April 1, 2014, the trial court, without holding a hearing on the petition, issued a decision and denied the petition. Appellant filed a timely appeal, alleging the following assignment of error:

> THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT A HEARING ON HIS PETITION FOR POST-CONVICTION RELIEF.

{¶ 6} At the outset, we note that appellant's claims regarding the ineffective assistance of *appellate* counsel are not proper grounds for relief in a petition for postconviction relief but, rather, are more properly raised in an application to reopen appeal pursuant to App.R. 26(B). *See State v. Mayrides*, 10th Dist. No. 03AP-347, 2004-Ohio-1623 ("The trial court also properly denied appellant's claim for ineffective assistance of appellate counsel, as such claims are not cognizable in post-conviction proceedings."). Therefore, we will not consider or address these claims in our discussion of whether the trial court erred in failing to grant appellant a hearing before denying his petition for postconviction relief.

{¶ 7} R.C. 2953.21 states in relevant part:

> (A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

---

[3] R.C. 2953.21(A)(2) states: "[e]xcept as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." The trial court accepted appellant's petition to be timely given appellant's counsel's unfamiliarity with the court's e-filing system and due to a technicality in the e-filing system which rejected the petition. We accept the trial court's finding that the petition was timely filed.

* * *

(C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.

* * *

(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.

## I. Purpose of Postconviction Relief

{¶ 8}   The postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Davis*, 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 17, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999).   Postconviction relief is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15, citing *State v. Murphy,* 10th Dist. No. 00AP-233 (Dec. 26, 2000).   Postconviction review is not a constitutional right but, rather, is a narrow remedy which affords a petitioner no rights beyond those granted by statute.   *Calhoun* at 281-82.   A postconviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 32; *Murphy*.

## II. Requirements to Have a Hearing

{¶ 9}   A defendant is not automatically entitled to an evidentiary hearing on a petition for postconviction relief.   *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980).   We review a trial

court's decision to deny a postconviction petition with a hearing for an abuse of discretion. *State v. Holloman*, 10th Dist. No. 06AP-608, 2006-Ohio-6789, ¶ 7. To warrant an evidentiary hearing on a petition for postconviction relief, a petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 15, citing R.C. 2953.21(C); *Hessler* at ¶ 33. As the Supreme Court of Ohio noted in *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), a trial court has a statutorily imposed duty to ensure a defendant presents evidence sufficient to warrant a hearing. The evidence must show "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a); *Calhoun* at 282-83. Pursuant to R.C. 2953.21(C), a defendant's petition for postconviction relief may be denied by a trial court without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Id.* at paragraph two of the syllabus.

### III. Res Judicata Bars Hearing

{¶ 10} A trial court may also dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. *Campbell* at ¶ 16, citing *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. "Res judicata is applicable in all postconviction relief proceedings." *Szefcyk* at 95. Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for postconviction relief if the defendant raised or could have raised the issue at trial or on direct appeal. *Id.* at syllabus; *State v. Reynolds*, 79 Ohio St.3d 158, 161 (1997). Similarly, to the extent that appellant contends that the trial transcript contains evidence of deficient performance on the part of trial counsel, appellant may not rely upon such evidence in support of his petition. *Davis*, citing *Cole* at 113-14.

{¶ 11} In order to avoid the defense of res judicata, support for the claims in the petition for postconviction relief must be competent, relevant, and material evidence, outside the trial court's record, and it must not be evidence that existed or was available for use at the time of trial. *See State v. Braden*, 10th Dist. No. 02AP-954, 2003-Ohio-

2949, ¶ 27. Where new counsel represents a defendant on direct appeal and the ineffectiveness of trial counsel could have been determined without resort to evidence outside the record, a petition for postconviction relief alleging ineffective assistance of trial counsel is barred by res judicata. *Cole* at 114.

{¶ 12} We find that several of appellant's claims in his petition for postconviction relief were barred by res judicata. Appellant claimed ineffective assistance of trial counsel for failures relating to the use of an interpreter at trial. Appellant argued that trial counsel failed to preserve the record of the translation, failed to request that the interpreter's qualifications be established on the record, failed to question the availability of a certified interpreter, failed to object to less than a word-for-word translation, and failed to request that the interpreter be sworn in on the record. In support of his arguments, he points in particular to Sup.R. 88. All these alleged errors were readily apparent from the trial transcript and could have been raised either at trial or on direct appeal. Indeed, both appellant and his co-defendant, Noor, raised issues in their direct appeal related to alleged failures relating to the use of an interpreter at trial. Noor also supported his arguments with reference to Sup.R. 88. We addressed the merits of those arguments in *Ibrahim* at ¶ 6-14, *Noor* at ¶ 61-77. We decline to address the interpreter issues again as appellant's claims in this regard are barred by res judicata. Therefore, we affirm the trial court's denial of the petition for postconviction relief without a hearing on grounds of ineffective assistance of trial counsel for failures relating to the use of the interpreter at trial.

{¶ 13} Appellant also claimed ineffective assistance of counsel for failure to object and request a mistrial when counsel for co-defendant Noor indicated appellant's guilt in an attempt to exonerate Noor. He further claimed that his attorney was ineffective by not asking for severance of the trials for appellant and Noor. Although these issues were not raised on appeal, they could have been, as appellate counsel could have determined these issues upon review of the transcript and without resort to evidence outside the record. We decline to address this issue as it was barred by res judicata. Therefore, we affirm the trial court's denial of the petition for postconviction relief on grounds of ineffective assistance of trial counsel for failure to object and request a mistrial and/or request severance of the trials from co-defendant Noor.

{¶ 14} Appellant claimed ineffective assistance of counsel for failure to call as a witness on his behalf an expert on Somalian tribal interaction and customs in order to show: (1) that appellant would have removed his shoes before entering the apartment; and (2) that there was significant tension between the Monnguer Somalia tribe, of which appellant is a member, and the Somalilander tribe, of which the prosecuting witnesses were members. The transcript, however, reflects that trial counsel questioned appellant regarding Somali culture, as well as regarding the custom of removing shoes before entering a home. Appellant testified that he removed his shoes before entering Farheyo's home. He also testified that one of the victims asked him where he was from and made an issue of this. Yet, appellant did not elaborate in his testimony regarding the tension between the Somali tribes. If appellant felt that the questioning was ineffective, or that an expert should have been called to address the same, he could have raised this on appeal, but he did not. We decline to address these issues as they were barred by res judicata. Therefore, we affirm the trial court's denial of the petition for postconviction relief on grounds of ineffective assistance of trial counsel for failure to further address the issues of the removal of shoes and the tension between the Somalilander tribe and the Monnguer Somalia tribe.

{¶ 15} Appellant makes several other claims of ineffective assistance of counsel, including, in general, failure to investigate and adequately prepare for trial, failure to subpoena key witnesses, and failure to inform appellant regarding the progress of his case and the availability of a self-defense instruction. Many of these claims too were barred by res judicata.

{¶ 16} Appellant claimed that trial counsel was ineffective because he failed to inform appellant regarding the affirmative defense of self-defense. He does not support this argument in his appellate brief, however, other than to say that, when his postconviction relief attorney explained self-defense to him, he realized it would have been applicable to him. It was clear from the transcript that self-defense was not raised by trial counsel at the jury instructions conference, and the trial court did not instruct the jury regarding self-defense. This claim could have been raised on direct appeal and, accordingly, is barred by res judicata. Therefore, we affirm the trial court's denial of the

petition for postconviction relief on grounds of ineffective assistance of trial counsel for failure to advise appellant regarding the affirmative defense of self-defense.

{¶ 17} Appellant also claimed that counsel should have questioned the witnesses at trial regarding:  (1) the fact that there was no blood on his face mask because he removed it before entering the apartment; (2) the fact that the police only collected the cellphones of appellant and co-defendant Noor; (3) the fact that appellant's wallet and $80 were stolen from him during the incident; (4) the fact that appellant did not own the gun; (5) the fact that the apartment was a known drug house; (6) the fact that appellant had an altercation with Abdi Mohamed ten days prior to the robbery; and (7) the fact that the prosecuting witnesses fabricated a story.  Several police officers testified at trial and could have been questioned as to the issues relating to physical evidence.   Appellant himself testified that he did not own a gun, and numerous witnesses testified that the apartment was a known drug house.  Appellant also testified that he and Abdi Mohamed had gotten into it on the streets before and that the prosecuting witnesses must have coordinated their stories.  All of this was clear from the transcript.  These claims could have been raised on direct appeal and, accordingly, are barred by res judicata.  Therefore, we affirm the trial court's denial of the petition for postconviction relief on grounds of ineffective assistance of trial counsel for failure to advise appellant regarding these issues.

## IV. Ineffective Assistance of Counsel

{¶ 18} A convicted defendant alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution;  and (2) that defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *Campbell* at ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, *cert. denied*, 497 U.S. 1011 (1990).  In order to secure a hearing on an ineffective assistance of counsel claim in a petition for postconviction relief, the petitioner bears the initial burden of submitting evidentiary documents that together contain sufficient operative facts which, if believed, would establish defense counsel had substantially violated at least one of a defense attorney's essential duties to his client and that the defendant was prejudiced as a result. *Cole* at 114; *Jackson* at syllabus. "Judicial

scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. In Ohio, a properly licensed attorney is presumed competent. *Davis* at ¶ 20, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). With this in mind, we consider the remainder of appellant's claims.

{¶ 19} Furthermore, with regard to appellant's averments that he asked his trial counsel to further investigate certain issues, we keep in mind that appellant did not present the affidavit of his trial counsel to corroborate either that trial counsel had been advised of these issues and witnesses by appellant or that he did not further investigate these issues. The lack of such an affidavit by trial counsel is significant because there is no evidence indicating what steps trial counsel took to prepare for trial. *State v. Messer-Tomak,* 10th Dist. No. 10AP-847, 2011-Ohio-3700, ¶ 14-15 ("Defendant claims her trial counsel failed to investigate various topics that would have enhanced counsel's ability to cross-examine the state's witnesses * * *, however, [h]e did not attach to her petition for post-conviction relief an affidavit from her trial counsel, or anyone else, stating what steps trial counsel took to prepare for cross-examination * * * [and therefore failed] to present sufficient operative facts indicating the extent of investigation counsel undertook * * * [and failed] to establish substantive grounds for a hearing or for relief on her claim of ineffective assistance of counsel based on counsel's failure to investigate [the case]."). *See State v. Silverman*, 10th Dist. No. 06AP-1278, 2007-Ohio-6498, ¶ 27, *discretionary appeal not allowed*, 117 Ohio St.3d 1459, 2008-Ohio-1635 (concluding the petitioner's claim that her trial counsel failed to effectively investigate or prepare the case for trial was unmeritorious where "the record [did] not include an affidavit from trial counsel, the investigator, or any other non-interested party with personal knowledge of what steps trial counsel took in preparing appellant's case for trial").

## V. Credibility of Appellant's Own Self-Serving Affidavit

{¶ 20} In support of his other claims that trial counsel was ineffective for failing to investigate and subpoena witnesses, appellant provided ten affidavits, including his own

and those of two family members.  Appellant argues that " '[w]hen determining whether there are substantive grounds for postconviction relief that would warrant a hearing the *affidavits offered in support of the petition should be accepted as true*.' " (Emphasis sic.) (Appellant's Brief, 1, quoting  *State v. Swortcheck*, 101 Ohio App.3d 770 (8th Dist.1995).). The Supreme Court of Ohio has stated, however, that " 'in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact.' "  *State v. Jeffers*, 10th Dist. No. 10AP-1112, 2011-Ohio-3555, ¶ 11, quoting *Calhoun* at 284.

{¶ 21}  In postconviction relief proceedings, the trial court may, under appropriate circumstances, deem affidavit testimony to lack credibility without first observing or examining the affiant. *State v. Taylor*, 10th Dist. No. 14AP-166, 2014-Ohio-3574, ¶ 16; *Davis* at ¶ 26, citing *Calhoun* at 284. The trial court in this case, without observing or examining appellant, determined that his affidavit could be viewed as self-serving due to his vested interest in the petition.

{¶ 22}  This court has previously held that a petitioner's own self-serving affidavit is legally insufficient to rebut the record in the underlying criminal proceedings.  *State v. Banks,* 10th Dist. No. 10AP-1065, 2011-Ohio-2749, citing *State v. Kapper*, 5 Ohio St.3d 36, 38 (1983); *Mayrides*.  Consistent with this holding, we find that appellant's own self-serving affidavit is legally insufficient to support his claim that trial counsel was ineffective for failing to secure footage from security cameras located in front and in back of the apartment.  Appellant claimed that said footage would have corroborated his testimony that he was not inside the apartment robbing people and that the prosecuting witnesses fled the apartment carrying drugs. In support of this alleged ineffective assistance of counsel, appellant points to his own affidavit, and nothing more.  Although affiant Abdullah Aboke avers that the security cameras existed, neither he nor appellant aver that they viewed the security footage.  Notwithstanding, appellant avers the security footage would have rebutted the evidence presented at trial.  As noted above, appellant's self-serving affidavit alone is legally insufficient to establish operative facts with regard to this claim.  We affirm the trial court's denial of the petition for postconviction relief on

grounds of ineffective assistance of trial counsel for failure to secure footage from security cameras.

## VI. Assessing Credibility of Supporting Affidavits

{¶ 23} The fact that a petitioner's affidavit can be viewed as self-serving and legally insufficient on its own does not mean it can always be completely disregarded. We have said that, "[u]nless the petition is also supported by operative facts other than those contained in the petitioner's affidavit, the petition may be denied without a hearing." *Taylor* at ¶ 16. Therefore, contrary to the trial court's conclusion that the affidavits of appellant's aunt and brother are also self-serving and thus "immediately discredited," we must examine these affidavits, as well as the affidavits of the remaining affiants, to determine if they present sufficient operative facts in support of the averments in appellant's affidavit to warrant a hearing.

{¶ 24} The Supreme Court of Ohio has provided courts guidance regarding how to determine the credibility of supporting affidavits in postconviction relief proceedings. The Supreme Court instructed that trial courts should consider all relevant factors, including:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial,[4] (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Taylor* at ¶ 23, citing *Calhoun* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-56 (1st Dist.1994). Further, in *Calhoun,* the Supreme Court stated:

> Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of

---

[4] The judge who reviewed the postconviction relief petition was the same judge who presided at trial. However, the averments on which we focus now were not facts presented at trial. Therefore, the judge did not have the opportunity to view witnesses testifying to or assess such evidence at trial.

sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur.

*Taylor* at ¶ 25, citing *Calhoun* at 285.

## VII. Affidavits of Fatima Ali Yussuf, Hussein Ibrahim, Luuley Mohamed, Mohamed Bukdow, Abdullah Aboke, and Marian Mohamed

{¶ 25} The affidavits of Fatima Ali Yussuf, Hussein Ibrahim, Luuley Mohamed, and Mohamed Bukdow contain nearly identical language and appear to have been drafted by the same person. Furthermore, these affidavits, as well as the affidavit of Abdullah Aboke, state generally that the affiants "had information" to offer but do not specify what particular information they would have offered, nor whether the information would have been helpful to appellant at trial. The affidavit of Marian Mohamed establishes that the information she would have offered to an investigator or at trial was made known to her *after* appellant's trial. Trial counsel cannot be considered ineffective for failing to investigate information gathered after trial. For these reasons, we find the trial court did not err in not holding a hearing to determine the credibility of these six affiants.

## VIII. Affidavits of Amina Manguera, Mowlina Aboke, and Aweis Ibrahim.

{¶ 26} In addition to his own affidavit, appellant offered the affidavits of Amina Manguera ("Manguera"), Mowlina Aboke ("Mowlina"), and Aweis Ibrahim ("Aweis"), and, in support of his claims that trial counsel was ineffective for failing to investigate, subpoena witnesses, and question witnesses regarding the following information:

- That alleged victim Abdi Mohamed bragged that a robbery did not occur (appellant, Aweis, Manguera, Mowlina)

- That another prosecuting witnesses stated that a robbery did not occur (Manguera)

- That the prosecuting witnesses attempted to extort $10,000 from appellant's family in exchange for their silence at the trial (Manguera, Aweis, Mowlina)

{¶ 27} Manguera is appellant's aunt, and she states that she is also the ex-wife of a member of the Somalilander tribe who manages their drug business. Manguera averred that she personally spoke with one of the alleged victims, who informed her that appellant

had seen the drugs and money in the apartment and, therefore, they beat him and made up the robbery story because they were afraid he would reveal their secret. She also stated that the alleged victim told her that the gun used in the incident did not belong to appellant. Additionally, she averred that the alleged victim told her that no robbery had occurred and that, if the family of appellant would give the group $10,000, they would remain silent and make the case go away. Finally, she stated that the alleged victim did testify at trial against appellant and subsequently called her to apologize for doing so.

{¶ 28} Aweis is the brother of appellant. Aweis stated that he was personally aware that Abdi Mohamed had been bragging at Star Coffee that he beat appellant, the member of another Somalian tribe, and put him in jail. He further averred that Somalilander witnesses approached his family attempting to extort $10,000 in exchange for their silence at appellant's trial. He indicated that he personally heard prosecuting witness Farheyo indicate that she wanted appellant to keep his mouth shut concerning her drug operation. Aweis made several other averments of which he claims to have had personal knowledge, but which we would consider to be speculation—such as his averment that his uncle, prosecuting witness Abdul Kadir Aden ("Aden"), implicated appellant in this crime in order "to avoid deportation, as he is a truck driver who transported drugs for the alleged Somalian victims in this incident." (Aweis Ibrahim Affidavit at No. 16.) Aweis did not aver that Aden personally told him this and, thus, it is not clear how he could personally have knowledge of this information.

{¶ 29} The fact that Manguera and Aweis are related to appellant, and also that one of the prosecuting witnesses allegedly involved in the Somalilander drug operations is Manguera's ex-husband, are factors which point to a lack of credibility. However, the fact that their averments, and those of appellant, are consistent not only with the averments of each other but also with the averments of affiant Mowlina, points to credibility. Mowlina's affidavit does not indicate any relation to appellant, nor any other interest in his success. Mowlina averred that he is the owner of a barbershop and that prosecuting witness Abdi Mohamed came into his barbershop. While there, Abdi Mohamed told Mowlina that there had been no robbery and that the robbery had been falsely reported to protect themselves from appellant after he saw the drugs in the apartment. Mowlina also averred that Abdi Mohamed told him that he and the prosecuting witnesses had offered

appellant's family $10,000 "to make the case go away."  Mowlina made several other averments of which he claims to have had personal knowledge, but which we would consider to be speculation—such as his averment that "[Abdi] Mohamed did not like [appellant], who was from a different Somali tribe than his, and wanted revenge against him." (Mowlina Aboke Affidavit at No. 28.)  He also made several general averments that he "had information" regarding the incident with Abdi Mohamed at Star Coffee and regarding the nature of the activities typically occurring at the apartment. However, he did not specifically state what particular information he would have offered, nor whether the information would have been helpful to appellant at trial. Nevertheless, his apparent disinterest, and the fact that his other averments were consistent with those of Manguera, Aweis, and appellant, lend credibility to their averments.

{¶ 30} Also lending credibility to the averments of Mowlina, Manguera, Aweis and appellant is exhibit No. 15, a purported jail visitor list showing that two of the prosecuting witnesses, Farheyo Adbulkar and Abdi Aden, attempted to visit appellant in jail. Appellant himself does not aver that he had personal knowledge of the alleged extortion attempt or that he informed his attorney of the same.  In support of this claim, however, appellant points to the affidavit of his brother, Aweis, who stated that he and his mother had made several attempts to contact trial counsel and inform him of the same—repeatedly going to his office, repeatedly calling and leaving messages for him, appearing at court dates, which ultimately were rescheduled—all to no avail because trial counsel was not present and did not return their phone calls.  This assertion that trial counsel was unavailable is consistent with that averred by appellant himself.  Appellant stated that, during the time he was being represented by counsel, counsel was suffering from cancer and often was coughing and having difficulty breathing on the five occasions they did meet. As noted above, appellant also presents the affidavits of Manguera and Mowlina to support the claim that witnesses attempted to extort his family. The fact that these specific averments of the affiants are not rebutted by any of the evidence presented at trial also lends credibility to these affiants.

{¶ 31} The state argues that the averments of the witnesses summarized above are hearsay and, therefore, would not have been admissible at trial.  The state also argues that the affidavits do not show that any deficiency on the part of trial counsel resulted in

prejudice to appellant. While it may be true that the averments constituted hearsay, Farheyo and Aden testified at trial, and appellant's counsel could have cross-examined them regarding the same. Counsel likewise could have subpoenaed Abdi Mohammed and examined him. Such cross-examination, in particular with regard to the jail visitor list, could have been damaging to the credibility of all the witnesses.

{¶ 32} The trial court did not address appellant's extortion claims, nor the purported jail visitor list. The state likewise did not address the jail visitor list and, as to the extortion claims, only argued that the claim is unpersuasive and not credible.

{¶ 33} Taking all of this into consideration, we find that the jail visitor list, along with the consistent averments of the witnesses summarized above, most particularly those of Mowlina, together set forth sufficient operative facts, which, if believed, would establish substantive grounds that trial counsel had substantially violated at least one of a defense attorney's essential duties to his client. We also find that, if believed, these averments could implicate all of the state's prosecuting witnesses (victims stated no robbery actually occurred; victims tried to extort money for their silence). Such implication of all the prosecuting witnesses could have resulted in a different outcome at trial, thereby prejudicing appellant. Therefore, we find the trial court erred in not holding a hearing to determine the credibility of the affiants as to these averments.

## IX. Mitigating Evidence of Penalty

{¶ 34} Appellant claimed ineffective assistance of counsel for failure to call witnesses to supply information on his behalf for the purpose of mitigation of his sentence. He claims that the witnesses would have testified that he is a devoted father of two young sons and a hard worker employed in the construction trade. He suggests his mother would have testified that he came to the United States at the age of seven and was a good student, athlete, and chess club member while attending school. He presented the affidavits of Manguera and Aweis in support of his own averment regarding the same.

{¶ 35} Generally, a defense counsel's decision as to what mitigating evidence to present during the penalty phase of a capital trial is a matter of trial strategy. *Campbell* at ¶ 37, citing *State v. Keith*, 79 Ohio St.3d 514, 530 (1997), *cert. denied*, 523 U.S. 1063; *Hessler* at ¶ 42. Defense counsel has a duty to investigate mitigating circumstances in order to make informed tactical decisions about which information would be most

helpful to a client's case.  *State v. Jackson*, 10th Dist. No. 01AP-808, 2002-Ohio-3330, ¶ 84, citing *State v. Johnson*, 24 Ohio St.3d 87, 90 (1986). However, out-of-record evidence that is merely cumulative of, or alternative to, other mitigation evidence defense counsel presented does not provide substantive grounds for a claim of ineffective assistance of counsel at mitigation.  *Hessler*; *State v. Combs*, 100 Ohio App.3d 90, 98, 105 (1st Dist.1994). Further, decisions regarding what witnesses to call falls within the purview of trial strategy and, absent prejudice, generally will not constitute ineffective assistance of counsel.  *Campbell* at ¶ 38, citing *Hessler* at ¶ 42. To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence that counsel failed to present, but also that "there is a reasonable probability that the evidence would have swayed the jury to impose [a lesser sentence]." *Keith* at 536.  We find that appellant himself informed the court that he had a family.  Furthermore, although appellant's counsel did not present all the mitigating evidence Manguera and Aweis presented, we cannot say there was a reasonable probability that the evidence would have swayed the jury to impose a lesser sentence. Therefore, we affirm the trial court's denial of the petition for postconviction relief without a hearing on grounds of ineffective assistance of trial counsel for failure to raise mitigating evidence at sentencing.

## X. Cumulative Error

{¶ 36} Finally, appellant claimed the cumulative effect of the errors alleged in his postconviction petition warrant the grant of a new trial and sentencing hearing or, at a minimum, a postconviction evidentiary hearing on the grounds presented in the petition. Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. *State v. Garner*, 74 Ohio St.3d 49 (1995), *cert. denied*, 517 U.S. 1147 (1996); *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus.

{¶ 37} Because we have reversed the trial court on its denial of a hearing with regard to Manguera, Aweis, Mowlina, and appellant as to the specific averments summarized at ¶ 26, we find this claim to be moot and will not address it at this time.

## XI. Conclusion

{¶ 38} For the foregoing reasons, we overrule in part and sustain in part appellant's assignment of error.  Therefore, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand this case to that court for further proceedings, in accordance with law and consistent with this decision.

*Judgment affirmed in part, reversed in part, and cause remanded.*

KLATT and O'GRADY, concur.

_____