[Cite as *State v. Barber*, 2017-Ohio-9257.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-172 |
| v. | : | (C.P.C. No. 12CR-4433) |
| Michael Barber, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 26, 2017

**On Brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On Brief:** *Michael Barber*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Michael Barber, appeals a decision of the Franklin County Court of Common Pleas originally filed on May 11, 2015, and thereafter amended and filed on September 17, 2015, concerning a motion for postconviction relief. We agree that one of Barber's claims in his postconviction petition was res judicata and appropriately dismissed without a hearing. We find that the trial court committed legal error in not using the appropriate legal analysis in deciding whether to consider Barber's affidavits. This error makes it premature to determine whether the trial court properly denied Barber a hearing, and we remand this matter to the trial court with instructions.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 30, 2012, a Franklin County Grand Jury indicted Barber and a co-defendant, Kelly Rupe, for possession of heroin in an amount equal to or exceeding 250 grams and possession of marijuana in an amount equal to or exceeding 5,000 grams

but less than 20,000 grams.[1]   (Aug. 30, 2012 Indictment.)   He pled not guilty on September 12.  (Sept. 12, 2012 Plea Form.)

{¶ 3}   On three occasions prior to trial (the last of which was the morning trial began) the State made plea offers, all of which Barber declined.  (Apr. 17, 2013 Hearing Tr. at 11, filed Oct. 6, 2014; Jan. 6, 2014 Plea Form; Jan. 13, 2014 Trial Tr. Vol. 1 at 6-9, filed Oct. 6, 2014.)  Under what was most likely the most favorable of these, Barber would have served eight years in prison to resolve all charges against him, including some in other pending cases.  (Trial Tr. Vol. 1 at 6-9.)  After Barber turned down the last plea offer on the morning of trial, Barber's attorney indicated to the trial court that Barber had lost faith in him and that Barber did not want to continue to be represented by that attorney. *Id.* at 9.  The trial court informed Barber that it would not continue the case at that late juncture, and that Barber could proceed pro se or he could keep current counsel.  *Id.* at 9-18.  Faced with that choice, Barber elected to keep his counsel.  *Id.* at 18.  At one point in the pretrial discussions, Barber asked if he could act as co-counsel but that matter was tabled in order to address the jury waiver with respect to the weapon under disability charge; Barber never renewed the request.  *Id.* at 22-23.

{¶ 4}   We have previously summarized the facts as presented in the trial:

> After complaints were made about possible drug activity at an apartment building located at 500 South Westgate Avenue in Columbus, Ohio, a police investigation discovered evidence of possible drug trafficking at that address. Subsequently, the police obtained and executed a warrant to search 2 upstairs units in the building, labeled apartment A and apartment B. Among other things, police found 12 wrapped bricks of marijuana weighing more than 5,000 grams, a gun, a baggie containing 315 grams of heroin, scales, and miscellaneous pills in apartment A. In apartment B, they found $17,000 in cash, some heroin, a scale, a ledger sheet, and the tape used to wrap the bricks of marijuana.
>
> Rupe testified that he was living in apartment A at the time of the search. Sometime before the search, appellant moved in with Rupe. Appellant and Rupe had known one another for a long time. Two or three months before the search, however,

---

[1] Barber was also indicted for possessing a weapon under disability and each drug count was accompanied by a firearm specification, but the trial court dismissed the gun specifications and weapon under disability counts at trial pursuant to Crim.R. 29.  (Jan. 16, 2014 Trial Tr. Vol. 3 at 583-86.)

appellant moved to apartment B after they had a fight. Appellant was living in apartment B on the day of the search.

According to Rupe, when appellant lived with him in apartment A, appellant began bringing heroin into the apartment. Appellant would cut the heroin, weigh it, and package it in baggies for sale. Rupe became involved in the drug transactions after appellant asked him to sell some heroin to someone. Rupe testified that he sold drugs for appellant between 50 and 100 times. He said that when people contacted appellant to purchase heroin, appellant would let Rupe know they were coming to his apartment and the quantity of drugs they wanted to buy. Rupe then took care of the transaction. (Tr. 319.) Rupe thought that by helping appellant out in this way, he would get appellant out of his apartment faster.

With respect to the drugs found in his apartment pursuant to the search warrant, Rupe denied knowing how the drugs got there. However, he stated that appellant might have had keys to his apartment. Appellant's fingerprint was found on the baggie of heroin recovered from apartment A. Rupe also explained that appellant liked to keep his money separate from his drugs, which could account for why the drugs were found in Rupe's apartment and the money was found in appellant's apartment. Paperwork found in appellant's apartment appeared to be a ledger sheet which kept track of how much money people owed and the quantity of drugs they wanted. (Tr. 256.)

Appellant presented one witness who testified that she bought a lot of heroin from Rupe in apartment A but never saw appellant or purchased heroin from him. In closing arguments, appellant's trial counsel argued that the drugs were Rupe's, not appellant's, and that it was Rupe who kept the money away from his drugs in apartment B. The jury rejected that argument and found appellant guilty of both drug possession counts and the trial court sentenced him accordingly.

*State v. Barber*, 10th Dist. No. 14AP-557, 2015-Ohio-2653, ¶ 3-7.

{¶ 5}   The trial court sentenced Barber to 14 years in prison; 11 years on the heroin count and 3 years on the marijuana count.  (June 13, 2014 Jgmt. Entry.)  Barber timely appealed and, among his other assignments of error, argued that "[t]he trial court committed reversible error in denying appellant's request to represent himself."  *Barber*,

2015-Ohio-2653, ¶ 8. This Court ultimately overruled that assignment of error in our decision on June 30, 2015, but we remanded the case to the trial court because it had failed to make the appropriate findings for imposing consecutive sentences under R.C. 2929.14(C)(4). *Id.* at ¶ 24-30. At a hearing on July 30, 2015, the trial court reimposed the 14-year sentence, this time making the relevant findings for consecutive sentences pursuant to R.C. 2929.14(C)(4). (July 30, 2015 Hearing Tr., filed Nov. 17, 2015; July 31, 2015 Jgmt. Entry; Aug. 28, 2015 Am. Jgmt. Entry.) Appeals from that sentence have proven unsuccessful. *State v. Barber*, 10th Dist. No. 15AP-902, 2016-Ohio-1409; *State v. Barber*, 10th Dist. No. 15AP-1140 (Jan. 22, 2016) (dismissing duplicate appeal in light of case No. 15AP-902).

{¶ 6} While the direct appeal was pending, on April 3, 2015, Barber filed pro se a petition for postconviction relief with exhibits. (Apr. 3, 2015 Postconviction Petition.) On April 15, before the State responded, Barber filed two supplemental affidavits, including his own. (Apr. 15, 2015 Postconviction Petition Supp.) Barber's petition proposed six claims for relief:

1. That his counsel was ineffective (claims 1-3) in failing to interview and subpoena witnesses or otherwise develop evidence on the following topics:

   a. That Barber did not have unlimited access to Rupe's apartment or keys thereto;

   b. That Rupe was a regular user and dealer of heroin, independent of Barber;

   c. That Rupe had nice cars, funded an expensive drug habit, collected valuable exotic fish, had sold a great deal of heroin over many years, and had other indications of being a large-volume drug dealer to rebut the State's contrasting photographs showing Barber's nice apartment and Rupe's less luxurious apartment;

2. That the trial court abused its discretion in not permitting Barber to replace his counsel before the trial began (claim 4);

3. That counsel failed to develop evidence to contest the State's fingerprint expert who testified that Barber's fingerprint was on a package of heroin found in Rupe's apartment (claim 6); and

4.  That counsel misled Barber into believing that he had obtained an expert to refute the State's expert on the fingerprint analysis and thus misled Barber into rejecting the offered plea (claim 5).

(Apr. 3, 2015 Postconviction Petition.)

{¶ 7}   Barber's affidavit supported his petition's claims by swearing that defense counsel told him he had hired a fingerprint expert and that there were not enough points of similarity to match his fingerprints to the print on a baggie of heroin recovered from the scene.  (Apr. 1, 2015 Barber Aff. at ¶ 16, 22, 24, filed Apr. 15, 2015.)  His affidavit explained that counsel indicated that he was contacting witnesses whom Barber had identified.  *Id.* at ¶ 16. Barber averred, however, that during trial, counsel failed to call the expert he had hired, failed to visually compare Barber's fingerprints with the evidence fingerprint due to counsel's inability to competently use courthouse display technology, and had forgotten to contact (and thus was unable to call) any of Barber's witnesses.  *Id.* at ¶ 25-28.  Barber, in his affidavit, concluded that, had he been accurately advised by counsel of counsel's lack of preparation, he would have taken the eight-year plea deal that was offered.  *Id.* at ¶ 28.

{¶ 8}   The State filed a memorandum in opposition and motion to dismiss on May 8, 2015.  (May 8, 2015 Memo. Contra & Mot. to Dismiss.)  Three days later, without giving reasoning of any kind, the trial court summarily denied Barber's postconviction petition.  (May 11, 2015 Entry Denying Postconviction Petition.)  On June 29, 2015, Barber sought leave to amend his petition with a fingerprint report obtained from his former counsel.  (June 29, 2015 Mot. for Leave to Amend.)  The following day, the State responded that the motion should be denied as the petition had already been denied and there was thus nothing to amend.  (June 30, 2015 Memo. Contra Mot. to Amend.)  On July 2, the trial court summarily denied leave to amend, stating no reason for judgment.  (July 2, 2015 Entry Denying Leave to Amend.)

{¶ 9}   Shortly thereafter, on August 31, 2015, Barber filed a motion for a final order pointing out that his postconviction petition could not, as a matter of statute, be dismissed without findings of fact and conclusions of law.  (Aug. 31, 2015 Mot. for Final

Appealable Order at 1, citing former[2] R.C. 2953.21(C)).  On September 14, 2015, Barber again sought to amend his petition, this time with an affidavit from his landlord to the effect that he and Rupe did not live together and that, to his knowledge, Barber did not have a key to Rupe's apartment.  (Sept. 14, 2015 Mot. for Leave to Amend.)

{¶ 10} Three days later, on September 17, 2015, the trial court issued an order granting Barber leave to amend and supplement in respect to the April 15 and September 14 motions, but leaving in place the denial of the June 29, 2015 attempt to amend.  (Sept. 17, 2015 Entry Denying Postconviction Petition.)  The same order again denied the postconviction petition without a hearing.  *Id.*  The trial court reasoned:

> Defendant's petition claims that the Constitutional errors are not included in the record and could not have been raised on appeal.  However, outside of Defendant's self-serving affidavits, he provides no evidence to conclude that the information relied upon by the trial and appellate courts were unavailable to Defendant prior to trial or throughout his appeal. Simply put, there is no evidence that Defendant's claims were otherwise undiscoverable. Therefore, Defendant's claims are barred by the doctrine of *res judicata.*
>
> The true thrust of Defendant's claims is his dissatisfaction with the weight and sufficiency of the evidence presented to the jury upon which he was convicted. However, the Court of Appeals denied Defendant's weight and sufficiency claims in his direct appeal. *See Barber*, <u>supra</u>, at ¶ 14-23. The Court of Appeals also considered and rejected Defendant's contention that he was prejudiced by proceeding to trial with his retained counsel. *See Barber*, <u>supra</u>, at ¶ 10-13. Furthermore, Defendant's ineffective assistance claims squarely fall within the ambit of sound trial strategy. The fact that, in hindsight, trial counsel could have pursued alterative avenues of defense does not amount to a Sixth Amendment violation. *See State v. Whatley*, 1999 Ohio App. LEXIS 1696 (10th Dist. App), citing *State v. Hill* (1996), 75 Ohio St. 3d 195.

(Emphasis sic.) (Sept. 17, 2015 Entry Denying Postconviction Petition at 4.)

{¶ 11} On March 9, 2016, Barber appealed the denial of his postconviction petition.

---

[2] Effective April 6, 2017, the Ohio General Assembly amended R.C. 2953.21. What was formerly division (C) now appears in division (D) of the statute. 2017 Am.Sub.S.B. No. 139 (reported online as 2015 Ohio SB 139).

## II. ASSIGNMENTS OF ERROR

{¶ 12} Barber assigns six alleged errors for our review:

I. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIMS ONE, TWO, THREE, AND FIVE OF HIS POST-CONVICTION RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED WHEN BY DENYING APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT CONDUCTING AN EVIDENTIARY HEARING, RELATIVE TO CLAIMS ONE, TWO, THREE, AND FIVE, VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 1, 2, 9, 10, 16 OF THE OHIO CONSTITUTION, AND OHIO REVISED CODE 2953.21.

III. THE TRIAL COURT ABUSED ITS DISCRETION, IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIM FOUR THAT THE TRIAL COURT FAILED TO INQUIRE WHY APPELLANT WANTED TO TERMINATE TRIAL COUNSEL AND/OR ALLOWING APPELLANT TO TERMINATE AND REPLACE COUNSEL, WHEN APPELLANT PROVIDED SUFFICIENT EVIDENCE OUTSIDE THE RECORD TO SUPPORT HIS CLAIM, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

IV. THE TRIAL COURT ERRED WHEN BY DENYING APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT CONDUCTING AN EVIDENTIARY HEARING, RELATIVE TO CLAIM FOUR, VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 1, 2, 9, 10, 16 OF THE OHIO CONSTITUTION, AND OHIO REVISED CODE 2953.21.

V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN THE COURT DID NOT MAKE A RULING ON OR ALLOW

APPELLANT'S MOTION FOR LEAVE OF COURT TO AMEND POST-CONVICTION PETITION, IN VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

VI.THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ISSUE ADEQUATE FINDINGS OF FACTS AND CONCLUSIONS OF LAW AND IMPROPERLY DISMISSING THE APPELLANT'S PETITION ON THE BASIS OF RES JUDICATA WITHOUT SPECIFYING THE PARTS OF THE RECORD OR FILES THAT ESTABLISHED THE BAR, IN VIOLATION OF THE 14TH AMENDMENT DUE PROCESS CLAUSE AND OHIO REVISED CODE 2953.21(C).

Because, except for error five, these assignments of error all ultimately bear on the question of whether the trial court properly dismissed the postconviction petition without a hearing based on the doctrine of res judicata, we address them together. However, as a preliminary matter, we first address jurisdiction.

## III.  JURISDICTION

{¶ 13}  A would-be appellant has 30 days to appeal a final order as of right. App.R. 4(A)(1).  This time limit is jurisdictional and should be considered sua sponte when appropriate.  *VFW Post 1238 v. Ohio Liquor Control Comm.*, 78 Ohio St.3d 1482 (1997); *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60 (1988).  It is undisputed that Barber filed his notice of appeal on March 9, 2016, much more than 30 days after September 17, 2015, and thus consideration of this issue is proper.

{¶ 14}  In civil cases, Ohio Rule of Civil Procedure 58(B) requires the clerk of the trial court to, within three days of entering the judgment, serve notice on the parties and note service on the docket.  Barber's case is a criminal case and generally, "Civ.R. 58(B) is not applicable to a criminal action or judgment."  *Henderson v. Saffold*, 8th Dist. No. 100406, 2014-Ohio-306, ¶ 7, citing *State ex rel. Aziz v. Fuerst*, 8th Dist. No. 78018, 2000 Ohio App. LEXIS 3833 (Aug. 24, 2000).  However, Civ.R. 58(B) does apply to decisions on postconviction petitions.  *State v. Nichols*, 11 Ohio St.3d 40 (1984), paragraph two of the syllabus ("Postconviction relief proceedings will be governed by the Ohio Rules of Appellate Procedure as applicable to civil actions."); *see also State v. Tucker*, 8th Dist. No. 95556, 2011-Ohio-4092, ¶ 9-14; *State v. McKinney*, 3d Dist. No. 4-11-01, 2011-Ohio-3521,

¶ 12-17. The clerk was required to make service within three days and note the service on the docket but the docket shows that the clerk never did.

{¶ 15} "[I]f the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day periods referenced in App.R. 4(A)(1) and 4(A)(2) begin to run on the date when the clerk actually completes service." App.R. 4(A)(3). In a letter to the trial court filed on February 19, 2016, Barber explained that he received actual service of the judgment entry by mail from the clerk's office on November 26, 2015. (Feb. 19, 2016 Letter at 1.) The Supreme Court of Ohio has recently explained that service can only be considered complete with "service *and notation of service* on the docket by the clerk of courts regardless of actual knowledge by the parties." (Emphasis added.) *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, ¶ 11. Because the clerk did not note service on the docket as required by Civ.R. 58(B), Barber's time to appeal never ran under App.R. 4(A), and thus his notice was timely as filed. *See State v. Barber*, 10th Dist. No. 15AP-1140 (Feb. 9, 2016) (journal entry noting Barber's time to appeal the postconviction petition had not yet begun to run).

## IV. DISCUSSION

### A. First, Second, Third, Fourth, and Sixth Assignments of Error – Postconviction Petition Dismissal Without a Hearing and Res Judicata

{¶ 16} The postconviction relief process is a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. *State v. Murphy*, 10th Dist. No. 00AP-233, 2000 WL 1877526, 2000 Ohio App. LEXIS 6129, *5 (Dec. 26, 2000); *see also, e.g., State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15.

{¶ 17} We have recognized that "in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." *State v. Canada*, 10th Dist. No. 16AP-7, 2016-Ohio-5948, ¶ 17; *see also State v. Taylor*, 10th Dist. No. 14AP-166, 2014-Ohio-3574, ¶ 16. However, before doing so a court should consider all relevant factors, including:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999); *see also Taylor* at ¶ 23; *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 24.

{¶ 18} A defendant is not automatically entitled to an evidentiary hearing on a postconviction relief petition. *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). R.C. 2953.21(D) provides that, "[b]efore granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief." Thus, the petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. *Ibrahim* at ¶ 9. Because the burden is the petitioner's, a postconviction relief petition may be denied without an evidentiary hearing where the petition and supporting materials do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun* at paragraph two of the syllabus.

{¶ 19} A trial court also may dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. *Ibrahim* at ¶ 10. In criminal cases, res judicata generally bars a defendant from litigating claims in a proceeding subsequent to the direct appeal "if he or she *raised or could have raised* the issue at the trial that resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, ¶ 92; *see also State v. Szefcyk*, 77 Ohio St.3d 93, 95-96 (1996). Stated differently, in criminal cases res judicata may preclude issues, arguments, or positions that could have been (even if they were not actually) litigated. *See State v. Breeze*, 10th Dist. No. 15AP-1027, 2016-Ohio-1457, ¶ 9. Therefore, notwithstanding the fact that a postconviction petition is a quasi-civil proceeding, "constitutional issues cannot be considered in postconviction proceedings where those issues should have been raised on direct appeal and where the issues may be fairly determined without resort to evidence

dehors [outside the scope of] the record."  *Murphy* at \*7; *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus; *Nichols* at 41-42; *see also Ibrahim* at ¶ 10.

{¶ 20}  We review a trial court's denial of a postconviction relief petition without a hearing for abuse of discretion.  *State v. McBride*, 10th Dist. No. 14AP-237, 2014-Ohio-5102, ¶ 11.  But we also recognize that "no court has the authority, within its discretion, to commit an error of law."  *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7, citing *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70.

{¶ 21}  For ease of discussion we address Barber's appellate assignments of error out of order, addressing his numbered claims before the trial court as "claims" and his numbered assignments of error before this Court as "assignments of error."

### 1. Third and Fourth Assignments of Error – Claim Four of the Postconviction Petition

{¶ 22}  Claim four of Barber's postconviction petition asserted that the trial court abused its discretion in not permitting Barber to replace his counsel before the trial began.  (Apr. 3, 2015 Postconviction Petition at 8-10.)  Barber's petition included a number of letters and other documents from outside the record showing that he was dissatisfied with his counsel's performance.  (Ex. 4, Apr. 3, 2015 Postconviction Petition.)  The record shows that the trial court also engaged in a considerable colloquy with Barber before his trial in an apparent attempt to ascertain the nature of Barber's problems with his counsel.  (Trial Tr. Vol. 1 at 9-18.)  The letters Barber offered in support of his postconviction motion added virtually nothing to the record that was not already apparent from the lengthy discussion on the record between Barber and the trial court judge pretrial.  We also previously considered and overruled the assignment of error that "[t]he trial court committed reversible error in denying appellant's request to represent himself." *Barber*, 2015-Ohio-2653, ¶ 8, 10-13.  Accordingly, this issue could have been and was previously litigated in the direct appeal and was thus properly disposed of on postconviction without a hearing as res judicata.

{¶ 23}  Barber's third and fourth assignments of error are overruled.

### 2. Second Assignment of Error – Whether the Trial Court Erred in Denying Barber's Petition for Postconviction Relief as to his Ineffective Assistance Claims without an Evidentiary Hearing

{¶ 24}  Barber claims the trial court erred by not holding an evidentiary hearing on his petition for postconviction relief.  Barber argues that he presented "four affidavits and

his own" to support his claims that "trial counsel was ineffective for failing to investigate, subpoena witnesses, to consult with [Barber], conduct pretrial investigations and to discuss trial tactics." (Barber's Brief at 15.) The trial court summarily rejected Barber's affidavits as self-serving and dismissed the petition without a hearing on res judicata grounds because, having rejected the affidavits, it found "no evidence" to support a finding that the information sought to be considered for postconviction relief was unavailable prior to trial or through the appeal process. (Sept. 17, 2015 Entry Denying Postconviction Petition at 4.) It stated:

> [O]utside of Defendant's self-serving affidavits, he provides no evidence to conclude that the information relied upon by the trial and appellate courts were unavailable to Defendant prior to trial or throughout his appeal. Simply put, there is no evidence that Defendant's claims were otherwise undiscoverable. Therefore, Defendant's claims are barred by the doctrine of *res judicata*.

(Emphasis sic.) *Id.* Barber argues that he had actually "offer[ed] substantial evidence" that counsel was ineffective and that the trial court "abused its discretion by not holding a[n] evidentiary hearing" in light of the affidavit evidence. (Barber's Brief at 18.).

{¶ 25} As we see it, the trial court was not in a position to disregard Barber's affidavits as self-serving because its decision bears no analysis of them other than to summarily dismiss them as self-serving. And we previously have cautioned that:

> The fact that evidence or testimony is "self-serving" is not a basis under any of the Ohio Rules of Evidence for excluding or ignoring evidence. Evid.R. in passim. In fact, any affidavit by a party that is beneficial to that party is likely to be intrinsically self-serving. Unless we are to revert to the ancient and well-repudiated rule that a witness is incompetent to testify where the witness has an interest in the proceedings, the self-serving nature of evidence, standing alone, is not a basis for exclusion. *Compare Messenger v. Armstrong*, 19 OHIO 41 (1850), syllabus (exemplifying the rule of witness incompetence on the grounds of interest in the outcome), *with* Evid.R. 601 (proclaiming that all persons are competent witnesses except as otherwise provided in the rules, which do not include interest as a grounds for lack of competence). If a trial of this case occurred, [a party] could take the witness stand, testify in his own interest, and prevail based on that testimony if a jury believed him.

*Bay v. Brentlinger Enters.,* 10th Dist. No. 15AP-1156, 2016-Ohio-5115, ¶ 28. As such, we are not convinced that the trial court completed the analysis of Barber's petition required by R.C. 2953.21(D) (formerly R.C. 2953.21(C)) and as prescribed by *Calhoun* and progeny. *Canada* at ¶ 17-21. Absent this consideration and analysis in the trial court's decision, we are left without recourse but to find that the trial court erred. *Id.* We also point out that, as a reviewing court, we must not perform the credibility analysis in the trial court's stead. *Id.* at ¶ 17. The ultimate question of whether an evidentiary hearing was required, remains within the discretionary province of the trial court. Until the trial court performs its analysis beyond simply finding Barber's affidavits "self-serving," our review of the trial court's decision on whether to hold an evidentiary hearing on his postconviction is unripe for review. We note the dissent would have us not discuss this issue, but because Barber raises claims in his second assignment of error under the Fifth and Fourteenth Amendments to the United State Constitution, and because Barber has asserted the infirmity of the trial court's ruling under R.C. 2953.21, we may review the trial court's judgment according to these stated errors. The Supreme Court opinion cited in the dissent does not limit our review (*Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.,* 24 Ohio St.3d 198, 202 (1986)), but rather, permissively provides support to the approach the dissenting opinion would have us adopt.

{¶ 26} Accordingly, we sustain in part Barber's second assignment of error. We find that the trial court's decision lacks sufficient analysis of the credibility of the affidavits submitted by Barber and thus that review of the trial court's decision on whether to hold an evidentiary hearing is unripe. We therefore remand the matter to the trial court with instructions that it perform the *Calhoun* analysis and, using the evidence it deems appropriate following that analysis, to proceed in accordance with R.C. 2953.21.

### 3. First and Sixth Assignments of Error – Other Claims

{¶ 27} Barber's claims of ineffective assistance before the trial court took the form of two arguments. First, Barber argued that his counsel failed to develop and obtain evidence that would have been helpful to Barber which may have impacted the result in the trial. Second, even if that evidence would not have actually impacted the result at trial, Barber asserts his counsel misled him into thinking that counsel had prepared better and had obtained more evidence in Barber's favor than he actually had—with the result

that Barber mistakenly turned down a beneficial plea offer.  For example, one affidavit reads:

> 16.   On 10-14-2013, (1) In a Jail visit, * * *. (2) [Defense counsel] informs me that he has hired a finger-print expert from North Carolina, tells me he has sent the prints to be analyzed , that [the prosecutor] did not have the print he thought he had and that this expert would be available for trial. (3) I gave [defense counsel] names, address of potential witnesses, he said we will need them at trial and that he would contact them.
>
> * * *
>
> 22. On 1-10-2014, 3 days before trial in a Jail house visit, [defense counsel] tells me that the results from North Carolina were inconclusive and there were not enough points to make a match to my print or anyone else and that an expert would be at trial to testify on my behalf.
>
> * * *
>
> 24. Judge [] denies my request to fire [defense counsel,] and ignores request to be co-counsel.  So, believing I had an expert witness going to say the print on Heroin bag was inconclusive and that it did not have enough points to make any match and believing my witness would be in trial, I continue to take my case to a jury.
>
> 25. On 1-14-2014, the second day of trial, I asked [defense counsel] did he subpoena any of my witnesses, he told me to give him another witness list as if he totally forgot.  So, I am left to scramble to get witnesses at trial on a moments notice and was only able to get Brittanie Delenbach.
>
> 26. On 1-15-2014, the third day of trial, the State's expert witness was going to take the stand, however, I asked [defense counsel], on the night before, when our (the defense expert witness) was going to testify.  [Defense counsel] stated that "we don't need him".  He stated that he was going to use a strategy that he previously used to defeat [the Franklin County Prosecuting Attorney].  He was going to put print on Heroin baggie and my known print from Jail record on projector and simply point out how they did not match.
>
> 27. On 1-16-2014, [defense counsel] does not perform strategies that he stated would defeat the Prosecuting

> Attorney. He tries to put both prints on the projector at the same time to; prove that they do not match. The projector was too small and the prints did not fit on the projector. So, he comes over to the defense table to ask me if there was anything else he should ask and in shock, I replied "no", so he rested his case.

(Apr. 1, 2015 Barber Aff. at ¶ 16, 22, 24-27.)

{¶ 28} Rather than address these arguments on their substance, the trial court stated that Barber's affidavits in support of his petition were self-serving and thus were no evidence. (Sept. 17, 2015 Entry Denying Postconviction Petition at 4.) In his first assignment of error, Barber now argues abuse of discretion in applying res judicata. In his sixth assignment of error, Barber argues that the lack of specificity in the ruling (no conclusions of fact or law initially) with reference to the record, denies him due process of the law. We cannot reach these assignments of errors because the issues involved are not yet ripe. The trial court must complete further analysis of the affidavits provided by appellant before concluding "no evidence" exists and that the issues are res judicata. Accordingly, we decline to consider Barber's first and sixth assignments of error as they are not yet ripe.

## B. Fifth Assignment of Error – Denial of Leave to Amend

{¶ 29} On May 11, 2015, the trial court summarily denied Barber's postconviction petition. (May 11, 2015 Entry Denying Postconviction Petition.) On June 29, 2015, unaware that his petition had been denied, Barber sought leave to amend his petition with a fingerprint report obtained from his former counsel. (June 29, 2015 Mot. for Leave to Amend.) The following day, the State responded in opposition pointing out that, as the postconviction petition had already been denied, the motion to amend was ineffective. (June 30, 2015 Memo. Contra Mot. to Amend.) Two days after that, without expressed explanation or reasoning, the trial court denied leave. (July 2, 2015 Entry Denying Leave to Amend.)

{¶ 30} Ohio Revised Code, section 2953.21(D) provides that when a trial court "dismisses [a] petition [for postconviction relief], it shall make and file findings of fact and conclusions of law with respect to such dismissal." *See also* R.C. 2953.21(H) (creating a similar obligation in the event a trial court denies a petition). Thus, as the trial court apparently later realized, the dismissal or denial of Barber's postconviction petition

without findings of fact and conclusions of law was in error. (Sept. 17, 2015 Entry Denying Postconviction Petition at 1.) We find moot Barber's fifth assignment of error because we have already sustained relevant parts of the second assignment of error. But because we do not know whether the trial court's decision denying Barber's motion to amend was made in reliance on the State's argument that there was no longer a petition to amend, as part of our remand on the second assignment of error the trial court is instructed to reconsider its decision on Barber's motion to amend his petition that he filed June 29, 2015.

{¶ 31} Barber's fifth assignment of error is moot and considered no further, but as part of our remand to the trial court on relevant parts of Barber's second assignment of error, we instruct the trial court to reconsider its decision on Barber's motion to amend his petition that he filed June 29, 2015.

## V. CONCLUSION

{¶ 32} The trial court correctly determined that Barber's claim four of his postconviction petition was barred by res judicata as a consequence of our earlier decision in *Barber*, 2015-Ohio-2653, ¶ 8, 10-13. Accordingly, we overrule Barber's third and fourth assignments of error. We sustain in part Barber's second assignment of error. Barber accurately argues that he submitted evidence in support of his petition and request for a hearing. We hold that the trial court erred as a matter of law in failing to use the appropriate legal analysis in deciding whether to consider Barber's affidavits. This error makes it premature to determine whether the trial court properly denied Barber a hearing. Thus, the second assignment of error is sustained in part and unripe to the extent that it requests this Court to consider the merits of the trial court's decision of whether Barber was entitled to a hearing.

{¶ 33} For similar reasons, we also hold that assignments of error one and six are unripe in their entirety.

{¶ 34} We remand this matter to the trial court with instructions that it conduct the required analysis of Barber's petition in all of its constituent parts in accordance with this decision and determine whether Barber's ineffective assistance claims are res judicata and whether he is entitled to a hearing.

{¶ 35} Finally, even though Barber's fifth assignment of error is moot and considered no further, as part of our remand to the trial court, we instruct the trial court

to reconsider its decision on Barber's June 29, 2015 motion to amend his petition in conducting its required analysis of Barber's petition in all of its constituent parts.

{¶ 36} Accordingly, we affirm in part and reverse in part and remand to the Franklin County Court of Common Pleas for proceedings consistent with this decision.

*Judgment affirmed in part, and reversed in part;*
*cause remanded.*

BROWN, J., concurs in part and concurs in judgment.
SADLER, J., concurs in part and dissents in part.

BROWN, J., concurring in part and concurring in judgment.

{¶ 37} Respectfully, I concur with the majority decision to sustain appellant's second assignment of error because the trial court failed to include in its findings an explanation of its basis for discounting the credibility of appellant's affidavits, making appellate review difficult.

{¶ 38} When a trial court dismisses a petition for post-conviction relief without an evidentiary hearing, it must enter findings of fact and conclusions of law. R.C. 2953.21(C); *State v. Canada*, 10th Dist. No. 16AP-7, 2016-Ohio-5948, ¶ 14, citing *State v. Jackson*, 10th Dist. No. 03AP-1065, 2004-Ohio-6438, ¶ 11, citing *State v. Lester*, 41 Ohio St.2d 51 (1975), paragraph two of the syllabus. Furthermore, a trial court may, in the sound exercise of discretion, judge the credibility of affidavits in determining whether to accept them as true. *State v. Calhoun*, 86 Ohio St.3d 279, 284 (1999). To hold otherwise would require a hearing for every post-conviction relief petition. *Id.*

{¶ 39} As set forth by the majority, in assessing the credibility of an affidavit submitted in support of a petition for post-conviction relief, the trial court should consider all relevant factors, including (1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. *Id.* at 285. A trial court may also find the affidavit testimony to be contradicted by evidence in the record by the same witness or to be internally inconsistent. *Id.* One or more of these factors may be sufficient in making the credibility determination. *Id.*

{¶ 40} In the present case, the trial court found appellant's affidavits to be self-serving. While such a finding is within the discretion of the trial court, the court failed to include an explanation of the basis on which it discounted the credibility of the affidavits. The court in *Calhoun* found a trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur. *Calhoun* at 285. Therefore, as the trial court did not do so here, I concur with the majority that the trial court erred by failing to include a sufficient explanation of why it discounted appellant's affidavit.

{¶ 41} I concur in judgment only with regard to the remaining portions of the majority decision.


SADLER, J., concurring in part and dissenting in part.

{¶ 42} I concur in the majority decision overruling the third and fourth assignments of error. However, because I believe the majority has addressed an issue not raised or preserved by appellant on appeal, I respectfully dissent as to the resolution of the remaining assignments of error.

{¶ 43} "This court rules on assignments of error, not mere arguments." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, quoting App.R. 12(A)(1)(b) (stating that " 'a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs' "); *see also State v. Johnson*, 10th Dist. No. 06AP-67, 2007-Ohio-2385, ¶ 7, citing App.R. 12(A)(2) and 16(A)(7); *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.*, 24 Ohio St.3d 198, 202 (1986), citing former App.R. 12(A); *C. Miller Chevrolet v. Willoughby Hills*, 38 Ohio St.2d 298, 301 (1974) (observing that "[i]t is certainly true * * * that in reviewing the judgment of a lower court, a court of appeals need only pass upon errors assigned and briefed; errors not specifically raised may be disregarded").

{¶ 44} Both *State v. Calhoun*, 86 Ohio St.3d 279 (1999), and *State v. Canada*, 10th Dist. No. 16AP-7, 2016-Ohio-5948, examined the trial court's assessment of the credibility of affidavit testimony. Here, appellant does not set forth any assignments of error challenging the trial court's determination of the credibility of his affidavits. Nor does

appellant argue in his assignments of error that the trial court erred in assessing the credibility of his affidavit.

{¶ 45} In my view, appellant does not raise or preserve the issue on which the majority bases its decision.   I would determine the appeal on its merits on the assignments of error set forth in the briefs.   Because the majority does not, I respectfully concur in part and dissent in part.

———————————