[Cite as *State v. Barber*, 2020-Ohio-1635.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                  :

     Plaintiff-Appellee,                 :               No. 19AP-416
                                                                (C.P.C. No. 12CR-4433)
v.                                             :
                                                               (REGULAR CALENDAR)
Michael R. Barber,                             :

     Defendant-Appellant.               :

---

D E C I S I O N

Rendered on April 23, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Michael R. Barber*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Michael R. Barber, appeals from a judgment of the Franklin County Court of Common Pleas denying his postconviction petition. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} In August 2012, the Franklin County Grand Jury indicted Barber and codefendant Kelly Rupe on counts of possession of heroin and marijuana in violation of R.C. 2925.11. Barber pleaded not guilty, and the matter proceeded to a jury trial. In a prior appeal, we summarized the facts presented at trial:

> After complaints were made about possible drug activity at an apartment building located at 500 South Westgate Avenue in Columbus, Ohio, a police investigation discovered evidence of possible drug trafficking at that address. Subsequently, the

police obtained and executed a warrant to search 2 upstairs units in the building, labeled apartment A and apartment B. Among other things, police found 12 wrapped bricks of marijuana weighing more than 5,000 grams, a gun, a baggie containing 315 grams of heroin, scales, and miscellaneous pills in apartment A. In apartment B, they found $17,000 in cash, some heroin, a scale, a ledger sheet, and the tape used to wrap the bricks of marijuana.

Rupe testified that he was living in apartment A at the time of the search. Sometime before the search, appellant moved in with Rupe. Appellant and Rupe had known one another for a long time. Two or three months before the search, however, appellant moved to apartment B after they had a fight. Appellant was living in apartment B on the day of the search.

According to Rupe, when appellant lived with him in apartment A, appellant began bringing heroin into the apartment. Appellant would cut the heroin, weigh it, and package it in baggies for sale. Rupe became involved in the drug transactions after appellant asked him to sell some heroin to someone. Rupe testified that he sold drugs for appellant between 50 and 100 times. He said that when people contacted appellant to purchase heroin, appellant would let Rupe know they were coming to his apartment and the quantity of drugs they wanted to buy. Rupe then took care of the transaction. (Tr. 319.) Rupe thought that by helping appellant out in this way, he would get appellant out of his apartment faster.

With respect to the drugs found in his apartment pursuant to the search warrant, Rupe denied knowing how the drugs got there. However, he stated that appellant might have had keys to his apartment. Appellant's fingerprint was found on the baggie of heroin recovered from apartment A. Rupe also explained that appellant liked to keep his money separate from his drugs, which could account for why the drugs were found in Rupe's apartment and the money was found in appellant's apartment. Paperwork found in appellant's apartment appeared to be a ledger sheet which kept track of how much money people owed and the quantity of drugs they wanted. (Tr. 256.)

Appellant presented one witness who testified that she bought a lot of heroin from Rupe in apartment A but never saw appellant or purchased heroin from him. In closing arguments, appellant's trial counsel argued that the drugs were Rupe's, not

> appellant's, and that it was Rupe who kept the money away from his drugs in apartment B. The jury rejected that argument and found appellant guilty of both drug possession counts and the trial court sentenced him accordingly.

*State v. Barber*, 10th Dist. No. 14AP-557, 2015-Ohio-2653, ¶ 3-7 ("*Barber I*").

{¶ 3} The trial court sentenced Barber to 11 years in prison for the heroin possession count and 3 years in prison for the marijuana possession count, to be served consecutively for a total of 14 years in prison. Barber timely appealed, arguing his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, the trial court erred in imposing consecutive sentences, and the trial court erred in denying his request to represent himself. *Barber I* at ¶ 8. This court rejected Barber's contention relating to his request to represent himself and his sufficiency and manifest weight arguments. *Id.* at ¶ 13,23. However, this court remanded the matter for resentencing based on the determination that the trial court erred in imposing consecutive sentences without making the findings required under R.C. 2929.14(C)(4). *Id.* at ¶ 30. In July 2015, the trial court reimposed the consecutive sentences. This court affirmed the reimposition of the consecutive sentences. *State v. Barber*, 10th Dist. No. 15AP-902, 2016-Ohio-1409 ("*Barber II*").

{¶ 4} During the pendency of his first direct appeal, on April 3, 2015, Barber filed a pro se petition for postconviction relief with exhibits. On April 15, 2015, Barber filed two supplemental affidavits, including his own, in support of his postconviction petition. On May 8, 2015, the state of Ohio responded to the postconviction petition. On June 29, 2015, Barber moved for leave to amend his postconviction petition. On September 14, 2015, Barber again moved for leave to amend his postconviction petition. On September 17, 2015, the trial court denied Barber's postconviction petition without a hearing. Barber appealed from this denial, and this court reversed based on a finding that the trial court failed to use the appropriate legal analysis in reviewing his postconviction petition. *State v. Barber*, 10th Dist. No. 16AP-172, 2017-Ohio-9257 ("*Barber III*"). This court remanded the matter to the trial court with instructions to review Barber's postconviction petition in accordance with law. *Id.* at ¶ 34.

{¶ 5}    After remand, on April 4, 2018, Barber filed an additional motion for leave to supplement his postconviction petition.  On June 6, 2018, the trial court denied Barber's April 2018 motion for leave to supplement his postconviction petition but granted his motions to amend his postconviction petition filed in April 2015, June 2015, and September 2015.  The trial court also again denied Barber's postconviction petition without a hearing.

{¶ 6}    Barber timely appeals.

## II. Assignments of Error

{¶ 7}    Barber assigns the following errors for our review:

> [1.] The trial court erred by denying appellant's petition for post conviction relief by finding that trial counsel was not ineffective by misleading and misadvising appellant during plea negotiations prior to trial, thereby causing appellant to forego a beneficial plea offer, violating appellant's United States Constitutional rights under the Sixth and Fourteenth Amendment; Strickland v. Washington 104 S.Ct. 2052; Lafler v. Cooper, 132 S.Ct. 1376; and Article I, Sections 1, 2, 5, 8, 10 and 20 of the Ohio Constitution.

> [2.] The trial court erred when it denied appellant's motion for leave to supplement his post-conviction.

## III. Discussion

{¶ 8}    Barber's first assignment of error alleges the trial court abused its discretion in denying his postconviction petition without a hearing.  In his second assignment of error, Barber contends the trial court abused its discretion in denying his motion for leave to supplement his postconviction petition.  These assignments of error lack merit.

{¶ 9}    R.C. 2953.21 governs the filing of postconviction petitions and affords a petitioner relief "if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution." *State v. Edwards*, 10th Dist. No. 18AP-704, 2019-Ohio-3905, ¶ 11; *State v. Lacking*, 10th Dist. No. 14AP-691, 2015-Ohio-1715, ¶ 10.  A petition for postconviction relief is a collateral civil attack on the prior criminal judgment, not an appeal of the judgment or a venue to relitigate substantive issues raised in a direct appeal.  *State v. Conway*, 10th Dist. No. 17AP-504, 2019-Ohio-2260, ¶ 12; *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994).  Because the postconviction relief process is a

collateral civil attack on a criminal judgment, "[i]t is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record.  *State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15.

{¶ 10}  R.C. 2953.21(G) sets forth when a postconviction petition may be amended. Before the state responds to a postconviction petition, the petitioner is free to amend without leave of court.  R.C. 2953.21(G)(2).  However, after the state's response, a petitioner generally may amend a petition only with leave of court.  R.C. 2953.21(G)(3); *State v. Young*, 10th Dist. No. 05AP-641, 2006-Ohio-1165, ¶ 28.  We review a decision denying a motion for leave to amend a postconviction petition for an abuse of discretion.  *State v. Oteng*, 10th Dist. No. 18AP-58, 2018-Ohio-3138, ¶ 15.  The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11}  A defendant is not automatically entitled to an evidentiary hearing on a postconviction relief petition.  *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980).  R.C. 2953.21(D) provides that "[b]efore granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief."  The petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 9.  Thus, the trial court may deny the petitioner's postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief."  *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999).  In reviewing whether the trial court erred in denying a petitioner's motion for postconviction relief without a hearing, this court applies an abuse of discretion standard.  *Calhoun* at 284 (stating the postconviction relief "statute clearly calls for discretion in determining whether to grant a hearing").

{¶ 12}  We first address Barber's challenge to the trial court's denial of his April 4, 2018 motion for leave to amend his postconviction petition.  Barber filed his postconviction petition on April 3, 2015.  He first requested to amend the petition on April 15, 2015. Because Barber filed that amendment before the state responded on May 8, 2015, it was

unnecessary for him to request leave as to that filing. Barber again moved for leave to amend on June 29, 2015, September 14, 2015, and then over two years later, on April 4, 2018. The trial court granted each of Barber's requests to amend his petition, except for his request filed April 4, 2018. In denying Barber's April 2018 motion for leave, the trial court noted that this motion was filed three years after he originally filed his postconviction petition. As such, the trial court viewed this motion as untimely. Further, the trial court resolved that the documents and exhibits attached to this motion offered nothing different in substance with respect to Barber's postconviction petition than the information already provided in earlier filings and considered by the trial court.

{¶ 13} We find it was reasonable for the trial court to deny Barber's final motion for leave to amend his postconviction petition. Barber's April 2018 amendment would have been his fourth amendment. He filed it three years after he originally filed his postconviction petition and nearly four years after his conviction. The submission includes documents concerning Barber's postconviction efforts to obtain additional information from his trial counsel regarding the fingerprint evidence and to have disciplinary proceedings initiated against his trial counsel. Based on these circumstances, we cannot conclude that the trial court abused its discretion in denying Barber's April 2018 motion for leave to amend his postconviction petition. Accordingly, we overrule his second assignment of error.

{¶ 14} Next, we address the trial court's decision to deny Barber's postconviction petition without a hearing. Barber alleges the trial court abused its discretion in denying his postconviction petition without a hearing because he submitted evidence that his counsel was ineffective during plea negotiations prior to trial. We are unpersuaded.

{¶ 15} In order to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires the defendant to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel can render deficient performance during plea bargaining either by failing to convey to the defendant a formal offer from the prosecution to accept a favorable plea deal or by giving unreasonable advice to the defendant about whether to

accept the plea offer. *State v. Fickenworth*, 10th Dist. No. 14AP-542, 2015-Ohio-1556, ¶ 11; *Lafler v. Cooper*, 566 U.S. 156, 165-67 (2012) (the right to counsel extends to plea bargaining).

{¶ 16} If the defendant can demonstrate deficient performance, he must then establish that he was prejudiced by the deficient performance. *Strickland* at 687. To show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that (1) he would have accepted the earlier plea had he been afforded effective assistance of counsel, (2) the prosecutor would not have canceled the plea, and (3) the trial court would have accepted the plea. *Missouri v. Frye*, 566 U.S. 134 (2012). "To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147; *see also Lafler* at 163-64.

{¶ 17} Barber asserts his trial counsel was deficient in falsely informing him that counsel had retained an expert to testify regarding the fingerprints found on a baggie containing heroin. In Barber's affidavit submitted in support of his postconviction petition, he stated that his trial counsel told him in October 2013 that he had hired a fingerprint expert to analyze the baggie of heroin found in Rupe's apartment. Barber's affidavit further stated that, three days before trial, his counsel told him that the results from the retained fingerprint expert were "inconclusive" because "there were not enough points to make a match to" Barber or anyone else, and that an expert would be called at trial on Barber's behalf. (Apr. 5, 2015 Barber Aff.) Trial counsel did not call the expert to testify at trial. Additionally, Barber asserts his trial counsel was deficient in misleading him regarding whether certain persons would testify at trial. According to Barber's affidavit submitted with his postconviction petition, in October 2013, he gave information regarding potential witnesses to his trial counsel. Other than Brittany Dellenbach, those witnesses did not testify at trial. Barber contends that, because of these alleged deficiencies, he declined the state's plea offer and proceeded to trial.

{¶ 18} Contrary to Barber's arguments, he failed to show any deficient performance by his trial counsel in regard to the plea-bargaining process. Barber does not contend his trial counsel failed to convey to him a formal plea offer from the state. And he presents no

evidence that his counsel advised him, reasonably or unreasonably, to reject a plea offer from the state. Before the start of trial, the parties informed the trial court that the state had offered Barber eight years in prison to resolve three pending criminal cases against him, and that Barber had rejected that offer and countered with six years in prison to resolve the cases. In support of his postconviction petition, Barber provided no evidence as to what advice his counsel gave to him regarding the state's offer. While Barber submitted evidence that he told his trial counsel about certain witnesses he viewed as being beneficial to his defense, he submitted no evidence that his counsel advised him prior to trial that the suggested witnesses, who were not called to testify, would materially assist his defense. Additionally, Barber offered no evidence that his trial counsel, in the context of the plea negotiations, advised him that the state's evidence was legally insufficient to convict him or otherwise gave legally erroneous advice. That Barber's trial counsel ultimately did not call the previously referenced fingerprint expert to testify does not demonstrate deficient performance. In this regard, trial strategy can change over time, and Barber presented no evidence that his counsel advised him that, in the absence of fingerprint evidence linking him to the baggie of heroin, he could not be convicted. The fingerprint evidence was not the only evidence establishing Barber's constructive possession of the drugs, as Rupe's trial testimony indicated that the drugs found in apartment A were Barber's. Therefore, Barber did not offer any evidence that his trial counsel gave him unreasonable advice in the context of plea negotiations.

{¶ 19} In sum, Barber failed to present evidence that could overcome the presumption that his trial counsel's conduct with respect to pretrial plea negotiations was within the wide range of reasonable professional assistance. Because Barber failed to submit evidence showing any deficient performance by his trial counsel during the plea-bargaining process, he correspondingly failed to demonstrate he received ineffective assistance of counsel. Therefore, we reject Barber's assertion that the trial court erred in denying his postconviction petition without a hearing based on his allegations of pretrial deficient performance by his trial counsel.

{¶ 20} For these reasons, we overrule Barber's first assignment of error.

## IV.  Disposition

{¶ 21}  Having overruled Barber's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and NELSON, JJ., concur.

———————————